JOSEPH BURSTINER AND FANNIE BURSTINER, APPELLANTS, v. THE CITY OF EAST ORANGE, LINCOLN E. ROWLEY, CLERK OF THE CITY OF EAST ORANGE; JAMES H. MUCHMORE AND J. WOODS McWILLIAMS, MEMBERS OF THE BOARD OF ASSESSMENTS OF THE CITY OF EAST ORANGE, AND HERMAN B. LEHLBACH, SECRETARY AND MEMBER OF THE BOARD OF ASSESSMENTS OF THE CITY OF EAST ORANGE, RESPONDENTS.

Submitted June 6, 1924—Decided January 19, 1925.

A notice of the intention of the governing body of a municipality to consider the undertaking of a public improvement, prescribed by section 9 of article 20 of the act concerning municipalities, as amended. (*Pamph. L.* 1918, *p.* 484), which, when any part of the cost thereof is to be assessed upon lands benefited thereby, does not specifically refer to the said improvement as "local," or in some other way make it clear that such cost is to be so assessed, is fatally defective.

---

On appeal from the Supreme Court.

For the appellants, *Aaron Marder*.

For the respondents, *Walter C. Ellis*.

The opinion of the court was delivered by

CLARK, J. This is an appeal from a judgment of the Supreme Court, dismissing a writ of *certiorari*. The prosecutor of the writ is the owner of property in the city of East Orange. He is attacking the proceedings under which his

property was assessed to pay for the widening of North Harrison street in that city. The Supreme Court considered the fifteen reasons presented by the prosecutor for setting aside the asessment and found none of them valid. It accordingly affirmed the assessment.

At the last term of this court we were constrained to set aside an assessment for grading, paving and macadamizing a street, because the notice of intention to undertake the improvement required by section 8 of article 20 of the act concerning municipalities (Home Rule act) as amended (*Pamph. L.* 1918, *p.* 484), had not, in our opinion, been given at the *time* contemplated by the language of that section. *Hazke* v. *Borough of Norwood*, 99 *N. J. L.* 479. In the case at bar we feel equally compelled to set aside the assessment, because the *form* of a similar notice does not, in our view, meet the requirements of that self-same section.

Before proceeding to a more detailed consideration of the questions presented, it may be as well to discuss briefly the general nature of taxation for public improvements. Originally, all public improvements were made at the expense of the taxpayers generally. The British parliament, in 1427, however, provided for the draining of certain marshes at the expense of a more limited class, namely, the property owners benefiting thereby. *Henry VI,* § 6, *ch.* 5. This statute, or the theory underlying it, was widely adopted and was carried to even greater length in this country than in England. *Rosewater Special Assessments, p.* 32. Our courts have sought to relate such legislation to the previously existing theories of taxation, eminent domain and even of contract. *Hamilton Special Assessments, pp.* 16, 45. Chief Justice Beasley, speaking for this court, in *State, Society et al., pros.,* v. *Paterson,* 42 *N. J. L.* 615, 617, declares the power of special assessments to be *sui generis* and depending for its justification on ancient usage. In any event, and in spite of this new doctrine, the legislature continued to grant to municipalities the power to make even improvements which benefited land in the vicinity thereof, at the expense of the public generally. *Bacon* v. *City of Elizabeth,* 51 *Id.* 246.

And so we find in the Home Rule act that the municipality is given the alternative of undertaking public improvements at the expense of the land benefited thereby or at the expense of the citizens generally (*section* 1 *of article* 20 *of the act concerning municipalities*) as amended. *Pamph. L.* 1922, *p.* 645.

The pertinent part of the notice of intention given in the instant case reads as follows:

"Public notice is hereby given to all persons whose lands may be affected thereby or who may be interested therein, that at a meeting of the city council, held on the 8th day of November, an ordinance was introduced providing for the widening of North Harrison street, * * * and that it is the intention of the city council to consider the final passage of said ordinance and the widening of the said public street at a meeting * * * at which time and place all persons whose lands may be affected by such improvement, or who may be interested therein, will be given an opportunity to be heard."

It will be observed that this notice is confined to an announcement of the physical character of the particular public work to be undertaken, namely, the widening of a street, and a reference to such work as an improvement. It nowhere uses the word "local" or intimates that an assessment will be made against lands in the vicinity benefiting thereby. The Supreme Court, in meeting the prosecutor's argument that the municipality did not intend a local improvement, overlooked, we think, the real defect in the notice. In our view the civic intention is quite immaterial. As a matter of fact, the proceedings subsequent to the notice obviously point to an improvement whose benefits are to be assessed against the property owners along North Harrison street.

This is unimportant, however, if the notice itself does not comply with the statute. The answer to this question presents a problem in statutory construction. In our view, it is unnecessary to resort to any doctrine of strict construction. We, therefore, express no opinion as to the effect of section 26 of article 37 of the Home Rule act, which prescribes a construction favorable to the municipality, upon the consti-

tutional requirement that power to be exercised *in invitum* is to be strictly construed. See *Logan* v. *Belsford, 94 N. J. L. 505* (at *p.* 507).

In determining the intention of the legislature, our first consideration is, of course, the language of the statute itself. *Hale* v. *Lawrence,* 21 *N. J. L.* 714, 743. *Section 9 of article 20 of the act concerning municipalities,* as amended (*Pamph. L.* 1918, *p.* 484), provides:

"After the introduction of any ordinance authorizing any local improvement, public notice shall be given to all persons whose lands may be affected thereby or who may be interested therein, of the intention of the governing body to consider the undertaking of such improvement."

As a matter of English, the "such" in the phrase "undertaking of such improvement," refers back to "any local improvement" its last-named antecedent, in the phrase, "authorizing any local improvement." The courts have given effect to this grammatical rule. *Summerman* v. *Knowles,* 33 *N. J. L.* 202; *Lang* v. *Berrien,* 77 *Id.* 214, and see *Johnson* v. *Grand Lodge,* 81 *Id.* 511, 517. In our opinion, this principle makes superfluous any elaborate application of the canons of statutory construction. The legislature, in mandatory terms, has directed that the notice advise certain persons that the municipality intends to consider the undertaking of an improvement described as "such improvement." By definition, "such" means "of that kind." *Webs. Inter. Dict., p.* 2073. So, under the rule above cited, its use in a statute, which provides for two entirely distinct classes of public improvements, general and local, has reference to that one of those different classes last named, *i. e.,* a local improvement. See *Guenther* v. *Des Moines (Iowa),* 197 *N. W. Rep.* 326. Any other construction would, we think, be a judicial substitution of the article "the" for the adjective "such," which the legislature has seen fit to use. Inasmuch, therefore, as the notice in the case at bar does not contain the word "local," and does not, as a substitute therefore, set forth the definition of a local improvement given by the statute (*Pamph. L.* 1922, *p.* 645), namely, an improvement,

the cost of which is to be assessed on the lands benefited thereby, we think it is clearly defective. It is significant, furthermore, that the Home Rule act, as originally drawn, contained a provision in respect to these notices of similar import. _Pamph. L._ 1917, _p._ 317. Although the notice, under the act before its amendment, was to be given even before the introduction of the ordinance, it is, nevertheless, illustrative of the legislative policy in the matter.

The construction which we have given to this section of the statute is, in our judgment, in accord with the main purpose of the law, and, therefore, to be commended. _State_ v. _Clark,_ 29 _N. J. L._ 96. The practice of undertaking public work at the expense of the local property owners obviously may lead to the oppression of that small minority by the taxpayers of the municipality generally. See _Hamilton Special Assessments,_ § 57. The financial condition of some of our municipalities in past years is an illustration of the lengths to which such abuses may go. _Rosewater Special Assessments, p._ 38. In order to prevent improvements thus in advance of public necessity, the legislature early placed a veto power in the hands of those whose property was to be assessed to pay for the improvement. _State, Vanata, pros.,_ v. _Mayor, &c., of Morristown,_ 34 _N. J. L._ 445.

This generally was effectuated by permitting such property owners to prevent the municipal council from undertaking an improvement if objections or remonstrances, as they were called, were filed by a certain proportion of the property owners to be affected thereby. _Logan_ v. _Belsford, supra._ Under the Home Rule act, this veto power is found in section 10 of article 20, as amended (_Pamph. L._ 1922, _p._ 201), the veto in this case being conditional, because the Circuit Court judge is permitted, upon a finding of public necessity, to overrule it. In an interesting discussion of the nature of a similar provision in the Public Works act (_Pamph. L._ 1892, _p._ 215), Mr. Justice Reed declared the power thus conferred upon the abutting property owners to be analogous to that exercised by the voters generally in the case of a referendum. _Wilson_ v. _Trenton,_ 55 _N. J. L._ 220,

and see *Union Savings Bank* v. *Jackson* *(Miss.)*, 84 *So. Rep.* 388.

In the case of an ordinary referendum, it has been decided that the voters are entitled to a clear statement of the proposition upon which they are voting. *Board of Trade* v. *Newark*, 97 *N. J. L.* 53; *affirmed*, 98 *Id.* 555. This must be so. By analogy, therefore, a construction of this section of the Home Rule act, which affords the property owner an opportunity of finding out both the nature of his obligation arising out of a local improvement and his correspondingly increased protection against its indiscriminate imposition, we conceive to be more consistent with the legislative scheme therein expressed. If shown to an expert, legal or otherwise, the word "local" in a notice will result in the immediate disclosure of his rights in the premises. Without it, or an equivalent expression of the intention to assess for benefits, the characterizing feature of a local as distinguished from a general improvement, the property owner is dependent upon the governing body of the municipality, whose interest obviously may be adverse to his, for his information.

We draw further support for our view from another recognized legal principle. Section 10 of article 20 of the Home Rule act, as amended *(Pamph. L.* 1922, *p.* 201), manifestly requires the property owners to occupy one of two inconsistent positions. They can either assent to the improvement or else they can object, and require the Circuit Court judge to find that it is a public necessity. It is fundamental that where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts. *Big. Estop.* 732. This doctrine is sometimes loosely referred to and considered under the more technical theories of strict estoppel. It is clear, however, in the very nature of things, that an election can only be binding if made with a knowledge of the facts. *Big. Estop., supra.* So, it has been held that a property owner is not bound by failure to object to an assessment if he did not know that such assessment was to be made at the expense of his property rather than to be paid for at the expense of the taxpayers

generally. *Page & Jones Taxation by Assessment,* § *1928;* *McQuil. Mun. Corp.,* § 1837.

What we have said in the preceding paragraph disposes likewise, we think, of the city's contention that the prosecutor is barred because of laches or estoppel. We shall not therefore pass upon the question that suggests itself as to whether or not the defect in the notice is a jurisdictional fact, and, so, one which would make the proceedings void irrespective of estoppel or laches. *App* v. *Stockton,* 61 *N. J. L.* 520. Since, moreover, we hold that the notice has not complied with the statute, we shall not touch upon the constitutional question—not raised by the prosecutor—of whether such notice fulfills the requirements of due process. Suffice it to say that this court has rigidly insisted upon the applicability of that principle to these improvement notices (*Sears* v. *Atlantic City, 73 Id.* 710), and has, in fact, gone further in this regard than many of the other state. 25 *Rul. Cas. L.,* § 75.

We feel that it is unnecessary to consider the other grounds of appeal presented. For the reasons considered, the proceedings under review will be set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, MINTURN, BLACK, KATZENBACH, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 13.